

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**


Robi S. Niwinski a/k/a
Genny L.,[1]
Complainant,

v.

Janet L. Yellen,
Secretary,
Department of the Treasury
(Internal Revenue Service),
Agency.

Request No. 2024004377

Appeal No. 2023000402

Hearing No. 570-2021-00898X

Agency No. IRS-21-0122-F

<u>DECISION ON REQUEST FOR RECONSIDERATION</u>

Complainant requested that the Equal Employment Opportunity Commission (EEOC or Commission) reconsider its decision in <u>Genny L. v. Dep't. of the Treasury</u>, EEOC Appeal No. 2023000402 (June 13, 2024).

<u>ISSUE PRESENTED</u>

Whether Complainant's request for reconsideration of EEOC Appeal No. 2023000402 meets the criteria detailed in 29 C.F.R. § 1614.405(c).

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2                                    2024004377

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Customer Service Representative in the Wage and Investment Division at the Agency's Appletree Call Center in Cheektowaga, New York.

On October 27, 2020, Complainant filed an EEO complaint alleging that the Agency discriminated against her on the bases of disability (achromatopsia; lumbar/cervical issues; anxiety; depression) and in reprisal for protected EEO activity when from May 11, 2018, to the present, the Agency failed to provide her with effective reasonable accommodation.

Following the investigation, Complainant timely requested a hearing. The Equal Employment Opportunity Commission Administrative Judge (AJ) subsequently held a hearing and issued a decision in favor of the Agency. In her decision, the AJ initially noted that Complainant requested the following accommodations: "[e]rgonomic chair; adjustment to lighting; longer monitor arms or possible altering of current monitor arms, adjustment to keyboard table, possible side table for 'mouse' maneuvering, black cubicle shield. Also, requesting cubicle 326 which is close to the rest room and since the cubicle is located in the corner – light adjustment may not be necessary." The AJ then thoroughly detailed the Agency's long history of continued attempts to provide Complainant with a reasonable accommodation and ultimately concluded that Complainant had not established that the Agency failed to provide her with an effective reasonable accommodation.

In finding no discrimination, the AJ determined that the accommodations provided to Complainant were precisely the ones that were recommended by Complainant's medical providers. While Complainant argued that the Agency failed to effectively accommodate her, the AJ emphasized that Complainant could not have known whether the offered accommodations were effective or not, as she had not returned to her workstation. Furthermore, the AJ found that Complainant's request for reassignment was essentially a request to be moved to a different supervisor. The AJ emphasized that agencies are not required to grant such requests as a reasonable accommodation. As for Complainant's allegation that the Agency unreasonably delayed the accommodation process, the AJ found that Complainant did not establish that the Agency had unreasonably delayed providing her with accommodations.

The Agency subsequently issued a final order adopting the AJ's finding that Complainant failed to prove that the Agency subjected her to discrimination by denying her an effective reasonable accommodation as alleged.

In her appeal, Complainant argued that the AJ abused her discretion by limiting the number of witnesses and the amount of time each witness, including Complainant, could present her/his case. Complainant also argued that the AJ's decision made it difficult to present sufficient evidence to support her case. Regarding the merits, Complainant argued that the Agency erred in finding no discrimination and argued that the probative record showed that the Agency failed to reasonably accommodate her.

In EEOC Appeal No. 2023000402 (June 13, 2024), the Commission affirmed the Agency's final order. The Commission noted that AJs are given broad discretion to conduct administrative hearings. Based on the record, the Commission found that the AJ did not abuse her discretion as Complainant failed to identify what specific or material information was otherwise lacking from the record due to the AJ's decision to limit time and witnesses.

Regarding Complainant's denial of reasonable accommodation claim, the Commission found that the AJ properly determined that the Agency did not unreasonably delay providing Complainant with her requested reasonable accommodations. While Commission acknowledged that the Agency denied Complainant's request for reassignment, the Commission found that the Agency was not obligated to reassign her because the record showed that: 1) Complainant failed to provide documentation showing how her medical conditions would prevent her from performing the essential functions of her current position even with all her requested accommodations in place; 2) and the Commission has long held that a request for reassignment to a new supervisor does not constitute an actionable request for reasonable accommodation, as such a request is on its face unreasonable.

Furthermore, the Commission emphasized that reassignment was an accommodation of last resort and explained that while Complainant was entitled to an effective accommodation, she was not entitled to her accommodation of choice. As Complainant failed to show that the provided accommodations were ineffective, the Commission concurred with the AJ's finding of no discrimination regarding Complainant's denial of reasonable accommodation claim.

<u>CONTENTIONS ON REQUEST</u>

In requesting reconsideration, Complainant largely reiterates the same contentions that she previously raised.

4                                          2024004377

The Agency asserts that Complainant failed to present any argument or evidence showing that the appellate decision involved a clearly erroneous interpretation of material fact or law, or that appellate decision would have a substantial impact on the policies, practices, or operations of the agency. The Agency requests that the Commission uphold its prior decision implementing the AJ's finding no discrimination.

## STANDARD OF REVIEW

EEOC regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision issued pursuant to 29 C.F.R. § 1614.405(a), where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency.  See 29 C.F.R. § 1614.405(c).

## ANALYSIS

We have reviewed the various arguments raised by Complainant in the instant request for reconsideration. However, we can find no basis to disturb the Commission's prior decision, as Complainant largely presents contentions that were previously raised and considered. The Commission emphasizes that a request for reconsideration is not a second appeal.  Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), Chap. 9 § VI.A (Aug. 5, 2015); see, e.g., Lopez v. Dep't of Agric., EEOC Request No. 0520070736 (Aug. 20, 2007).  Rather, a reconsideration request is an opportunity to demonstrate that the appellate decision involved a clearly erroneous interpretation of material fact or law, or will have a substantial impact on the policies, practices, or operations of the Agency. Complainant has not done so here.

## CONCLUSION

After reviewing the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(c), and it is the decision of the Commission to deny the request.  The decision in EEOC Appeal No. 2023000402 remains the Commission's decision.  There is no further right of administrative appeal on the decision of the Commission on this request.

5                                    2024004377

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0124)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by their full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

### RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

December 19, 2024
Date



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Robi S. Niwinski a/k/a
Genny L.,[1]
Complainant,

v.

Janet L. Yellen,
Secretary,
Department of the Treasury
(Internal Revenue Service),
Agency.

Appeal No. 2023000402

Hearing No. 570-2021-00898X

Agency No. IRS-21-0122-F

## DECISION

On October 27, 2022, Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's September 27, 2022, final order concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq. For the following reasons, the Commission AFFIRMS the Agency's final order.

## ISSUES PRESENTED

Whether the AJ's decision that Complainant did not establish that she was denied a reasonable accommodation is supported by substantial evidence.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Customer Service Representative in the Wage and Investment division at the Agency's Appletree Call Center in Cheektowaga, New York.

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2                                                          2023000402

On October 27, 2020, Complainant filed an EEO complaint alleging that the Agency discriminated against her on the bases of disability (achromatopsia; lumbar/cervical issues; anxiety; depression) and reprisal for protected EEO activity under Section 501 of the Rehabilitation Act of 1973 when:

1.    from May 11, 2018, to the present, the Agency has failed to provide her with effective reasonable accommodation.

Complainant stated that she suffers from lumbar and cervical issues, which include herniated discs, nerve damage, and dislocation for which she underwent surgery sometime in late 2017. See Hr'g Tr. at 8-9. She also suffers from achromatopsia, which she explained has made her legally blind with extreme photophobia or sensitivity to light, so that the more light there is, the less vision she has. See Hr'g Tr. at 10-11. She further stated that she has been diagnosed with anxiety and depression so that she needs to work remotely and that she also suffers from hypertension which causes her blood pressure to become dangerously high when she is exposed to anxious situations. See Report of Investigation (ROI) at 47. She identified requesting a reasonable accommodation as her protected activity. See ROI at 46.

Complainant had pre-existing accommodations which included ZoomText software, a sapphire magnifier, two 24" monitors, adjustable monitor arms, cube shields, dimmed overhead lighting, and an ergonomic chair. See ROI at 290. On May 8, 2018, Complainant sought additional accommodations including a new ergonomic chair and to be moved to a different cubicle, cubicle 326, and her request was assigned to the Reasonable Accommodation Coordinator (RA Coordinator). See ROI at 290. On May 30, 2018, Complainant submitted a Reasonable Accommodation Request form updating her request to ask for a reassessment of her work area, a new ergonomic chair, adjustment to lighting, longer monitor arms or possible altering of her current monitor arms, adjustment to her keyboard table, a possible side table for mouse maneuvering, a black cubicle shield and moving to cubicle 326 as it was close to the restroom and located in the corner. See ROI at 134. Cubicle 326 was not available at the time as another contact representative was already sitting there so Complainant was offered a choice among several other available cubicles and chose cubicle 360 as it was near the restroom and an entrance to the office. See ROI at 241. The Agency conducted an ergonomic assessment through Federal Occupational Health (FOH) and provided Complainant with a new ergonomic chair as well as replacement monitors and working with Complainant to adjust the lighting in her cubicle. See ROI at 240.

Since that time, the Agency and Complainant have engaged in a continuous interactive process in order to accommodate Complainant's conditions, which included making adjustments to the lighting and suggesting other solutions to minimize the light in Complainant's cubicle, consulting with FOH and with facilities management in the building to determine what was possible with regard to the lighting around Complainant's cubicle that would not create a safety hazard or otherwise overly inconvenience the other employees, and ordering new larger 32" monitors. See ROI at 290-96.

When the new, larger monitors were ordered, there was additional discussion as to whether it would be necessary to order new arms to support the monitors but in June 2019, it was determined to wait until after the monitors arrived before trying to order any new monitor arms as it was necessary to do some research into what monitor arms would fit the 32" monitors. See ROI at 292-93. The record indicates that new monitor arms were ordered but there were delays in the new monitor arms arriving as they were inadvertently shipped to the wrong location and then when the new monitor arms arrived in November 2019, the monitors and monitor arms needed to be uninstalled as they were discovered to be unsafe due to a concern that the weight of the monitors would cause the unit to crash down. See ROI at 293. The RA Coordinator testified that there were several delays with respect to the monitor arms because it was the business unit's responsibility to maintain equipment so she needed to let the business unit know that the old monitor arms were broken and then they were waiting for the results of another ergonomic evaluation by FOH before ordering new monitor arms and then they needed to conduct research as to different types of desks that could be ordered to support the monitor arms without toppling over. See Hr'g Tr. at 139-46. She further acknowledged that there were issues that the ergonomic evaluation had noted about moving the mouse to be closer to the same height as the keyboard and replacing the keyboard tray and mouse clamp and she needed to wait for the business unit to place an order for the mouse clamp as it would be expensed by the business unit. See Hr'g Tr. at 153-55.

There was an additional delay caused by the government shutdown from December 22, 2018, through January 26, 2019, during which no one, including the RA Coordinator, was permitted to do any work. Thereafter, the RA Coordinator continued working with Complainant and her supervisor, offering Complainant the option of moving to several different cubicles as Complainant reported still having issues with the lighting in her current cubicle but Complainant opted to stay in cubicle 360. In April 2019, a Safety & Occupational Health Specialist in facilities management (Safety Specialist) conducted a site inspection of Complainant's cubicle, noting that the darkness adversely affected other employees nearby and when Complainant suggested she fully cover her cubicle with two full shields and two half-shields and use cardboard to cover up any remaining holes, the Safety Specialist told Complainant it would create a fire hazard. See ROI at 273-74. The Safety Specialist recommended that Complainant use a glare screen and glare glasses, but Complainant refused. See ROI at 274. The Safety Specialist noted that Complainant was only infrequently in the office at the time and was "not receptive to any outside suggestions." See ROI at 274. Beginning in April 2018, Complainant began using leave without pay (LWOP), a combination of sick and annual leave, and Family and Medical Leave Act (FMLA) leave on a



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Robi S. Niwinski a/k/a
Genny L.,[1]
Complainant,

v.

Janet L. Yellen,
Secretary,
Department of the Treasury
(Internal Revenue Service),
Agency.

Appeal No. 2023000402

Hearing No. 570-2021-00898X

Agency No. IRS-21-0122-F

## DECISION

On October 27, 2022, Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's September 27, 2022, final order concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq. For the following reasons, the Commission AFFIRMS the Agency's final order.

## ISSUES PRESENTED

Whether the AJ's decision that Complainant did not establish that she was denied a reasonable accommodation is supported by substantial evidence.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Customer Service Representative in the Wage and Investment division at the Agency's Appletree Call Center in Cheektowaga, New York.

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2                                                                          2023000402

On October 27, 2020, Complainant filed an EEO complaint alleging that the Agency discriminated against her on the bases of disability (achromatopsia; lumbar/cervical issues; anxiety; depression) and reprisal for protected EEO activity under Section 501 of the Rehabilitation Act of 1973 when:

1.    from May 11, 2018, to the present, the Agency has failed to provide her with effective reasonable accommodation.

Complainant stated that she suffers from lumbar and cervical issues, which include herniated discs, nerve damage, and dislocation for which she underwent surgery sometime in late 2017. See Hr'g Tr. at 8-9. She also suffers from achromatopsia, which she explained has made her legally blind with extreme photophobia or sensitivity to light, so that the more light there is, the less vision she has. See Hr'g Tr. at 10-11. She further stated that she has been diagnosed with anxiety and depression so that she needs to work remotely and that she also suffers from hypertension which causes her blood pressure to become dangerously high when she is exposed to anxious situations. See Report of Investigation (ROI) at 47. She identified requesting a reasonable accommodation as her protected activity. See ROI at 46.

Complainant had pre-existing accommodations which included ZoomText software, a sapphire magnifier, two 24" monitors, adjustable monitor arms, cube shields, dimmed overhead lighting, and an ergonomic chair. See ROI at 290. On May 8, 2018, Complainant sought additional accommodations including a new ergonomic chair and to be moved to a different cubicle, cubicle 326, and her request was assigned to the Reasonable Accommodation Coordinator (RA Coordinator). See ROI at 290. On May 30, 2018, Complainant submitted a Reasonable Accommodation Request form updating her request to ask for a reassessment of her work area, a new ergonomic chair, adjustment to lighting, longer monitor arms or possible altering of her current monitor arms, adjustment to her keyboard table, a possible side table for mouse maneuvering, a black cubicle shield and moving to cubicle 326 as it was close to the restroom and located in the corner. See ROI at 134. Cubicle 326 was not available at the time as another contact representative was already sitting there so Complainant was offered a choice among several other available cubicles and chose cubicle 360 as it was near the restroom and an entrance to the office. See ROI at 241. The Agency conducted an ergonomic assessment through Federal Occupational Health (FOH) and provided Complainant with a new ergonomic chair as well as replacement monitors and working with Complainant to adjust the lighting in her cubicle. See ROI at 240.

Since that time, the Agency and Complainant have engaged in a continuous interactive process in order to accommodate Complainant's conditions, which included making adjustments to the lighting and suggesting other solutions to minimize the light in Complainant's cubicle, consulting with FOH and with facilities management in the building to determine what was possible with regard to the lighting around Complainant's cubicle that would not create a safety hazard or otherwise overly inconvenience the other employees, and ordering new larger 32" monitors. See ROI at 290-96.

3                                                          2023000402

When the new, larger monitors were ordered, there was additional discussion as to whether it would be necessary to order new arms to support the monitors but in June 2019, it was determined to wait until after the monitors arrived before trying to order any new monitor arms as it was necessary to do some research into what monitor arms would fit the 32" monitors. See ROI at 292-93. The record indicates that new monitor arms were ordered but there were delays in the new monitor arms arriving as they were inadvertently shipped to the wrong location and then when the new monitor arms arrived in November 2019, the monitors and monitor arms needed to be uninstalled as they were discovered to be unsafe due to a concern that the weight of the monitors would cause the unit to crash down. See ROI at 293. The RA Coordinator testified that there were several delays with respect to the monitor arms because it was the business unit's responsibility to maintain equipment so she needed to let the business unit know that the old monitor arms were broken and then they were waiting for the results of another ergonomic evaluation by FOH before ordering new monitor arms and then they needed to conduct research as to different types of desks that could be ordered to support the monitor arms without toppling over. See Hr'g Tr. at 139-46. She further acknowledged that there were issues that the ergonomic evaluation had noted about moving the mouse to be closer to the same height as the keyboard and replacing the keyboard tray and mouse clamp and she needed to wait for the business unit to place an order for the mouse clamp as it would be expensed by the business unit. See Hr'g Tr. at 153-55.

There was an additional delay caused by the government shutdown from December 22, 2018, through January 26, 2019, during which no one, including the RA Coordinator, was permitted to do any work. Thereafter, the RA Coordinator continued working with Complainant and her supervisor, offering Complainant the option of moving to several different cubicles as Complainant reported still having issues with the lighting in her current cubicle but Complainant opted to stay in cubicle 360. In April 2019, a Safety & Occupational Health Specialist in facilities management (Safety Specialist) conducted a site inspection of Complainant's cubicle, noting that the darkness adversely affected other employees nearby and when Complainant suggested she fully cover her cubicle with two full shields and two half-shields and use cardboard to cover up any remaining holes, the Safety Specialist told Complainant it would create a fire hazard. See ROI at 273-74. The Safety Specialist recommended that Complainant use a glare screen and glare glasses, but Complainant refused. See ROI at 274. The Safety Specialist noted that Complainant was only infrequently in the office at the time and was "not receptive to any outside suggestions." See ROI at 274. Beginning in April 2018, Complainant began using leave without pay (LWOP), a combination of sick and annual leave, and Family and Medical Leave Act (FMLA) leave on a near daily basis until after the government shutdown ended. See ROI at 371.

On March 17, 2020, Complainant's counsel submitted a reasonable accommodation request requesting that Complainant be allowed to telework full time as a reasonable accommodation, attaching a note from Complainant's physician which stated that telework was necessary "to address the medical limitation that she is no longer able to physically attend the workplace and that her limitation is due to the exacerbation of her anxiety and depression." See ROI at 98. The note also stated that Complainant's physician was "medically recommending re-assignment as a last resort." See ROI at 98.

The RA Coordinator stated that she consulted with management and it was decided that Complainant's request to telework could not be granted because she could not perform the essential functions of her position from home, specifically because Complainant's position as a contact representative required taking incoming phone calls from the public but IT determined that receiving those calls from home was not secure.[2] See Hr'g Tr. at 161-62; ROI at 376-77.

Some weeks later, the Cheektowaga duty station where Complainant worked was closed due to the Covid pandemic and Complainant was placed on weather and safety leave from April 13, 2020 to July 9, 2020 due to her not being able to work from home. See ROI at 369. The RA Coordinator sent Complainant's request to telework to FOH for an evaluation and FOH responded with an assessment which stated that "Based on the medical documentation, the employee does not need full time telework or reassignment. If she is able to obtain her prior requested reasonable accommodations, she should be able to work at her duty station and complete her essential duties with her prior requested accommodations." See ROI at 91. Complainant acknowledged that she did not submit any additional medical documentation to rebut or challenge FOH's determination. See Hr'g Tr. at 90-94. On May 27, 2020, Complainant was permitted to take a laptop home to begin working under the Emergency Telework Authorization implemented due to the pandemic and was given the option to take home the 32" monitors, which she declined. See ROI at 294. The Department Manager, who was Complainant's second-line supervisor, stated that sometime in June 2020, Complainant reported that it was difficult for her to telework without the 32" monitors but she did not have a desk at home which would support the weight of the 32" monitors. See ROI at 241. She stated that Complainant began using leave, either annual, sick, or LWOP, on July 30, 2020. See ROI at 241.

On October 27, 2020, Complainant's counsel emailed the RA Coordinator requesting that Complainant be reassigned as a reasonable accommodation to a Customer Service Representative position in the Automated Collection Systems branch, which is located at the same duty station as Complainant's current position and performs the same duties. See ROI at 67-68. Complainant's counsel submitted a note from Complainant's physician stating that "[her] final recommendation is reassignment to a different, more accomadating (sic) and co-operative work location," noting that Complainant "has been subjected to dismal workplace co-operation which has caused undo (sic) stress with increased anxiety, panic, and significant blood pressure elevation for her." See ROI at 69.

In August 2020, the Department Manager was in contact with Complainant about needing to come into the office to complete mandatory training and to test the efficacy of new monitor arms that had been installed in her cubicle. See ROI at 294-95. On September 9, 2020, Complainant came into the office to inspect the new monitor arms and determined that the monitors were close enough, but the monitors were placed too low, and she could not see the bottom of the screens. See ROI at 295.

---

[2] At the time, as the AJ noted, telephone calls were routed through employees' desktop computers using an application and so employees could not make phone calls without their desktop computers.

The Department Manager consulted with facilities management, and it was determined that due to attrition, Complainant's originally requested cubicle, cubicle 326, was now available for Complainant and Complainant's monitors and monitor arms could be moved to that cubicle and the desk would be raised 4 to 5 inches so they would be high enough.  See ROI at 295.  On September 25, 2020, Complainant responded, declining the offer to be relocated to cubicle 326 and stating that reassignment was her objective.  See ROI at 295; 245.  The Department Manager stated that Complainant came into the office on December 7, 2020, to see if the adjustment in raising her desk would work for her and she reported that it did.  See ROI at 245.  She stated that she advised Complainant on December 8, 2020, that Complainant would be expected to report to the office to work from December 14, 2020, but on that day, Complainant called and said it was too emotional for her to report.  See ROI at 245.  She noted that Complainant did, however, accept the offer to be moved to cubicle 326 at that time.  See ROI at 245.  The record indicates, however, that since that time, Complainant has not returned to work.

The Department Manager stated that Complainant was provided with all her requested accommodations in cubicle 326, noting that the two light fixtures above her cubicle have been reduced to only a single light bulb and the light bulb has a dark sleeve covering the bulb.  See ROI at 244.  She noted that Complainant asked to have even that single light bulb removed but that would create a safety hazard for other employees and was not permitted but stated that between the cube shields and the light shield, it was "very dark" in the cubicle.  See ROI at 244.  She further noted that Complainant was offered a glare screen and glare glasses which Complainant declined.  See ROI at 244.  As of December 2020, Complainant's reasonable accommodation request was marked closed as Complainant had been granted her requested accommodations to the cubicle, noting that the Agency had provided Complainant with an ergonomic chair, two cube shields, an ergonomic mouse, two 32" monitors, two monitor arms adjusted to come closer to her face, as well as removing two light bulbs above her cubicle and raising her desk 5 inches higher.  See ROI at 295.  The RA Coordinator testified that the monitor arms permit the monitors to be moved as close as Complainant needs them to be to her face and can move up and down and left and right as well, and that she has a keyboard tray under her desk that can also be raised or lowered as needed.  See Hr'g Tr. at 182-83.  The RA Coordinator acknowledged that Complainant's cubicle does not currently have a mouse clamp.  See Hr'g Tr. at 185.

On January 19, 2021, in response to an email the Department Manager sent Complainant on January 14, 2021, stating that Complainant was being directed to return to work on January 19th, Complainant's counsel sent the Department Manager an email stating that Complainant's previously requested accommodations "would no longer be effective" and stating that Complainant requested reassignment for the same reasons as stated in October 2020.  The Department Manager stated that the request for reassignment did not meet the criteria for a reasonable accommodation because the proposed reassignment would place Complainant in the same position with the same essential functions and the same workplace.  See ROI at 242.  Complainant responded in March 2021 stating that the requested reassignment "would be a fresh start for [her] with all new personnel, which is necessary in order to accommodate [her] anxiety disorder and hypertension."  See ROI at 60.

6                                                    2023000402

Complainant testified that her request for reassignment was because she had "extreme negative associations" with her current position that caused her stress and anxiety. See Hr'g Tr. at 78. The RA Coordinator later emailed Complainant requesting additional information about how her medical condition would prevent Complainant from performing the essential functions of her position so as to require reassignment, but Complainant never responded to that request. See Hr'g Tr. at 90-94.

At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation and notice of her right to request a hearing before an Equal Employment Opportunity Commission Administrative Judge (AJ). Complainant timely requested a hearing, and the AJ held a hearing on September 7, 2022, and issued a decision on September 16, 2022. The AJ's decision thoroughly reviewed the long history of the Agency's continued attempts to provide Complainant with a reasonable accommodation and concluded that Complainant had not established that the Agency failed to provide her with an effective reasonable accommodation. The AJ noted that Complainant had not returned to her workstation since December 2020 and had therefore never worked in cubicle 326 to know whether or not the offered accommodations would be effective or not. The AJ further found that Complainant's request for a reassignment was essentially a request to be moved to a different supervisor and that agencies are not required to grant such requests as a reasonable accommodation. The AJ further noted that, although Complainant emphasized that she never received a mouse clamp, Complainant admitted at the hearing that she did not know if it would be possible to place her mouse on the keyboard tray or whether the mouse clamp would be necessary. The AJ further found that Complainant did not establish an unreasonable delay in providing her with a reasonable accommodation, noting that Complainant's requests were highly complex and that much of the delay in providing Complainant's accommodations could not be attributed to the Agency. The AJ further found that Complainant did not establish that she was subjected to reprisal because there was no nexus between her protected activity and Complainant did not establish that she was denied an effective reasonable accommodation.

The Agency subsequently issued a final order adopting the AJ's finding that Complainant failed to prove that the Agency subjected her to discrimination by denying her an effective reasonable accommodation as alleged.

<u>CONTENTIONS ON APPEAL</u>

Complainant appealed. Complainant first argues that the AJ abused her discretion by limiting the number of witnesses and the amount of time each witness including Complainant to present her case, contending that due to the AJ's limitation on the witnesses and the time to testify Complainant was unable to present sufficient evidence to support her case.

On the merits, Complainant argues that the AJ's determination that the Agency did not violate the Rehabilitation Act by unreasonably delaying her reasonable accommodation requests was in error and further contends that the AJ erred in finding that the Agency provided an effective accommodation, citing for example the Agency's failure to provide a mouse clamp and in denying Complainant's request for reassignment, insisting that the accommodations the Agency has provided have not been effective.

In response, the Agency argues that the AJ acted well within her discretion in limiting the time for Complainant to testify and excluding some of the witnesses as being unnecessary. The Agency further contends that the AJ's conclusion that the Agency did not unreasonably delay in providing Complainant with an accommodation or denied Complainant an effective accommodation is supported by substantial evidence.

## STANDARD OF REVIEW

Pursuant to 29 C.F.R. § 1614.405(a), all post-hearing factual findings by an AJ will be upheld if supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 477 (1951) (citation omitted). A finding regarding whether or not discriminatory intent existed is a factual finding. See Pullman-Standard Co. v. Swint, 456 U.S. 273, 293 (1982). An AJ's conclusions of law are subject to a de novo standard of review, whether or not a hearing was held.

An AJ's credibility determination based on the demeanor of a witness or on the tone of voice of a witness will be accepted unless documents or other objective evidence so contradicts the testimony, or the testimony so lacks in credibility that a reasonable fact finder would not credit it. See EEOC Management Directive 110, Chapter 9, at § VI.B. (Aug. 5, 2015).

## ANALYSIS

*Hearing Testimony*

As an initial matter, we will address Complainant's challenge to the AJ's decision to exclude some of Complainant's witnesses and limit the time for Complainant and her witnesses to testify during the hearing. Under 29 C.F.R. §1614.109, AJs are granted broad discretion in the conduct of administrative hearings, including limiting witnesses and testimony as the AJ deems necessary. See Eryn O. v. Dep't of the Army, EEOC Appeal No. 2022003457 (Sept. 5, 2023); Kessinger v. U.S. Postal Serv., EEOC Appeal No. 0520100302 (April 30, 2010). Given the AJ's broad authority to regulate the conduct of a hearing, a party claiming that the AJ abused his or her discretion faces a very high bar. Trina C. v. U.S. Postal Serv., EEOC Appeal No. 0120142617 (Sept. 13, 2016), citing Kenyatta S. v. Dep't of Justice, EEOC Appeal No. 0720150016 n.3 (June 3, 2016) (responsibility for adjudicating complaints pursuant to 29 C.F.R. § 1614.109(e) gives AJs wide latitude in directing terms, conduct, and course of administrative hearings before EEOC).

In this case, Complainant contends that the AJ's decision not to permit some of Complainant's listed witnesses to testify and limiting the time Complainant and her witnesses were able to testify during the hearing deprived her of the opportunity to fully present her case. We note, however, that Complainant has not identified what specific or material information was otherwise lacking from the record due to the AJ's decision. Upon our review of the record, we are not persuaded that the AJ's decisions limiting testimony deprived Complainant of a full opportunity to present her case. We conclude that the AJ acted well within her discretion in excluding some of Complainant's witnesses and limiting the time for Complainant and her witnesses to testify. See Edmond F. v. Dep't of Transp., EEOC Appeal No. 0120142939 (June 21, 2016).

*Reasonable Accommodation*

Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 (2012) (as amended) requires that an Agency make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless the Agency can demonstrate that doing so would impose an undue hardship. 29 C.F.R. § 1630.9(a) (2017); EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act (Enforcement Guidance) (revised Oct. 17, 2002). Once an employer becomes aware of the need for an accommodation of an employee's disability, the employer may engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations. See 29 C.F.R. § 1630.2(o)(3) (2019). An Agency may choose among reasonable accommodations as long as the chosen accommodation is effective, and while the preference of the individual with a disability should be given primary consideration, an Agency has the ultimate discretion to choose between effective accommodations. See Enforcement Guidance, supra, at Q. 9.

To establish that she was denied a reasonable accommodation, Complainant must show that: (1) she is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) she is a "qualified" individual with a disability pursuant to 29 C.F.R. § 1630.2(m); and (3) the Agency failed to provide her with a reasonable accommodation. See, e.g., Bill A. v. Dep't of the Army, EEOC Appeal No. 0120131989 (Oct. 26, 2016).

Complainant assigns error to the AJ for finding that Complainant did not establish an unnecessary delay in providing her with her requested accommodations. Complainant cites to the long delay before the Agency provided Complainant with new monitor arms that were able to support the 32" monitors and the fact that ultimately, Complainant's May 2018 reasonable accommodation requests were not actually provided until December 2020 to support her argument that the Agency unreasonably delayed in responding to Complainant's accommodation request. In determining whether there has been an unnecessary delay in responding to a request for reasonable accommodation, relevant factors would include: (1) the reason(s) for the delay; (2) the length of the delay; (3) how much the individual with a disability and the agency each contributed to the delay; (4) what the agency was doing during the delay; and (5) whether the required accommodation was simple or complex to provide. See Yessenia H. v. Dep't of Vet. Affs., EEOC Appeal No. 0720070027 (Oct. 13, 2015).

9                                          2023000402

The AJ rejected Complainant's argument that there was an unreasonable delay in providing Complainant's accommodation, emphasizing that the accommodations Complainant required were highly complex and further that the process was often delayed by factors and organizations outside of the Agency's control, including the need to wait for FOH to conduct its multiple ergonomic assessments and waiting for the suppliers to ship the ordered supplies. The AJ also noted that some of the delays were attributable to Complainant herself, such as because Complainant delayed in providing the documentation and physical characteristics necessary for the Agency to order the appropriate ergonomic chair by around 60 days and the fact that after April 2018, Complainant only attended work sporadically. The AJ found that the RA Coordinator worked diligently to communicate with Complainant, facilities management, FOH, the vendors, and management to provide Complainant with her requested accommodations. The AJ further found the RA Coordinator and the Department Manager to be credible and sincere in their attempts to provide Complainant with her requested accommodations, noting that they "showed unusual patience" in working together to coordinate the complex parts of Complainant's reasonable accommodation request. In reaching her conclusion that the Agency did not unreasonably delay in providing Complainant with a reasonable accommodation, the AJ considered all the relevant factors and gave specific examples from the record. We find that the AJ's conclusion is supported by substantial evidence in the record and contrary to Complainant's argument on appeal, the mere fact that Complainant apparently disagrees with the conclusions the AJ drew from the evidence, that is not sufficient to establish that the AJ committed reversible error.

Finally, the AJ concluded that the Agency ultimately provided Complainant with all the accommodations she initially requested, which included moving her to cubicle 326, as she originally requested, and providing Complainant with an ergonomic chair, two cube shields, an ergonomic mouse, two 32" monitors, two monitor arms adjusted to come closer to her face, as well as removing two light bulbs above her cubicle and raising her desk 5 inches higher so that the screens were not too low. The AJ noted that while Complainant emphasized that she was not provided with a mouse clamp, the AJ found that Complainant had not established that a mouse clamp was, in fact, necessary because Complainant admitted that it could be possible to place her mouse on the keyboard tray. The AJ further found that Complainant did not establish that those accommodations were ineffective because Complainant by her own admission has not actually tried to work in cubicle 326 with the modifications but insisted that reassignment was the only possible accommodation. The AJ concluded, however, that the Agency was not required to provide Complainant with a reassignment as her request was "a transparent request for new supervisors due to interpersonal issues."

We agree with the AJ that the evidence in the record does not support Complainant's assertion that the Agency violated the Rehabilitation Act by denying her a reasonable accommodation. While Complainant is entitled to an effective accommodation, she is not entitled to the accommodation of her choice. See e.g., Casteneda v. U.S. Postal Serv., EEOC Appeal No. 01931005 (1994) (stating complainants are not necessarily entitled to the accommodation of their choice, but to a reasonable accommodation). In addition, we agree with the AJ that Complainant has not established that she was entitled to reassignment as a reasonable accommodation.

In general, reassignment is the reasonable accommodation of last resort and should be considered only when: (1) there are no effective accommodations that would enable an employee to perform the essential functions of his or her current position; or (2) accommodating the employee in the current position would cause an undue hardship. 29 C.F.R. Part 1630, App. § 1630.2(n); Enforcement Guidance on Reasonable Accommodation, "Reassignment." Moreover, the Commission has long held that a request for reassignment to a new supervisor does not constitute an actionable request for reasonable accommodation, as such a request is on its face unreasonable. See Coleen M. v. Dep't of Defense, EEOC Appeal No. 2020003100 (Sept. 16, 2020); see also EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, No. 915.002, Q. 33 (rev. Oct. 17, 2002) ("An employer does not have to provide an employee with a new supervisor as a reasonable accommodation"). Complainant herself admitted that she wanted a reassignment as a "fresh start" because of the "negative associations" with her current position due to the stress of the long accommodations process but we also note that there is nothing in the record to indicate that management acted in such a way as to exacerbate her mental conditions. See, e.g., Belton v. Dep't of Veterans Affs., EEOC Appeal No. 0320120052 (April 2, 2013) (finding that the complainant was not entitled to be reassigned to a new supervisor as a reasonable accommodation even where the complainant established that he had a mental impairment that was exacerbated by his hostile interactions with his supervisor).

Finally, to the extent Complainant appears to argue that she needed to be reassigned because of the stress caused by the negative associations attached to her current position, we note that a stress-free work environment cannot be considered a request for reasonable accommodation. See Powell v. Dep't of the Army, EEOC Appeal No. 0120070275 (Apr. 16, 2009) (finding that complainant's request for accommodation of a non-hostile work environment or a stress-free work environment could not be considered a request for reasonable accommodation for his disability). We further note that Complainant did not specifically explain why reassignment to a new position simply in order to avoid stress was necessary in connection with her mental conditions so as to show a nexus, or causal relationship between her alleged disability and her desired accommodation. Complainant admitted that she never responded to the RA Coordinator's request for additional documentation to support her request for a reassignment by indicating how her medical conditions would prevent her from performing the essential functions of her current position even with all her requested accommodations in place. See Tessa L. v. Dep't of the Interior, EEOC Appeal No. 0120141159 (July 25, 2017).

While Complainant disagrees with the AJ's credibility findings and conclusions drawn from the evidence in the record, that is not sufficient grounds to overturn an AJ's decision. See Zetta B. v. Dep't of Agric., EEOC Appeal No. 2020003201 (Sept. 2, 2021) (noting that the substantial evidence standard is a low threshold). Upon our review of the record, we find that the AJ's conclusion that Complainant did not establish that the Agency violated the Rehabilitation Act is reasonable and supported by substantial evidence in the record and therefore must be affirmed.

11                                    2023000402

*Disparate Treatment*

Applying the <u>McDonnell Douglas</u> burden-shifting standard defined in <u>McDonnell Douglas Corp.</u> <u>v. Green</u>, 411 U.S. 792 (1973), a complainant initially must establish a prima facie case of discrimination by presenting facts which, if unexplained, reasonably give rise to an inference of discrimination, i.e., that a prohibited consideration was a factor in the adverse employment action. <u>See</u> <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 507 (1993); <u>Texas Dep't of Community Affs.</u> <u>v. Burdine</u>, 450 U.S. 248, 252-53 (1981); <u>McDonnell Douglas</u> 411 U.S. at 802. The burden then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. <u>Burdine</u>, 450 U.S. at 253. Once the agency has met its burden, the complainant has the responsibility to demonstrate by a preponderance of the evidence that the agency's action was based on prohibited considerations of discrimination, that is, its articulated reason for its action was not its true reason but a sham or pretext for discrimination. <u>See</u> <u>Hicks</u>, 509 U.S. at 511; <u>Burdine</u>, 450 U.S. at 252-5 3; <u>McDonnell Douglas</u>, 411 U.S. at 804.

Complainant may establish a prima facie case of reprisal by showing that: (1) she engaged in a protected activity; (2) the agency was aware of the protected activity; (3) subsequently, she was subjected to adverse treatment by the agency; and (4) a nexus exists between the protected activity and the adverse treatment. <u>Whitmire v. Dep't of the Air Force</u>, EEOC Appeal No. 01A00340 (Sept. 25, 2000).

While there is no doubt that Complainant engaged in protected activity when she requested a reasonable accommodation, we find that Complainant did not establish a prima facie case of reprisal because she did not establish that she was subjected to any adverse treatment by the Agency. As stated earlier, the evidence in the record did not establish that the Agency denied Complainant a reasonable accommodation and Complainant did not allege that the Agency subjected her to any other adverse treatment. We therefore affirm the AJ's finding that Complainant did not establish that she was subjected to reprisal. <u>See</u> <u>Hinch v. Dep't of Veterans</u> <u>Affs.</u>, EEOC Appeal No. 0120071247 (July 2, 2007).

CONCLUSION

Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we AFFIRM the Agency's final order finding that Complainant did not establish that she was subjected to discrimination as alleged.

STATEMENT OF RIGHTS - ON APPEAL
RECONSIDERATION (M0124.1)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.  The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**. A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit their request for reconsideration, and any statement or brief in support of their request, via the EEOC Public Portal, which can be found at

https://publicportal.eeoc.gov/Portal/Login.aspx

Alternatively, Complainant can submit their request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, a complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless Complainant files their request via the EEOC Public Portal, in which case no proof of service is required.

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. **Any supporting documentation must be submitted together with the request for reconsideration.** The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(f).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0124)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by their full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

13                                    2023000402

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:


Carlton M. Hadden, Director
Office of Federal Operations


June 13, 2024
Date

Form No. TDF 62-03.5 *(11/12/2015 Edition)*

| | For Office Use Only: |
|---|---|
| **INDIVIDUAL COMPLAINT OF EMPLOYMENT DISCRIMINATION WITH THE DEPARTMENT OF THE TREASURY** | *Department Formal Case Number* <br><br> *Filing Date* |

## PART I: COMPLAINANT IDENTIFICATION

**1.** Name

| Last Name <br> Niwinski | First Name <br> Robi | Middle Initial |
|---|---|---|

**2.** Primary Contact Number (Include Area Code)

| Phone <br> (716) 393-0396 | Best Time to Call:   ○ Morning   ○ Afternoon   ○ Evening |
|---|---|

**3.** Preferred Email Address

Email
Conma2324@gmail.com

**4.** Home Address (You must notify the Department of any changes of address or your complaint may be dismissed. Send updated information to: Office of Civil Rights and Diversity, Department of the Treasury, 1500 Pennsylvania Avenue NW, Washington, DC 20220.)

| Street Address <br> 3765 Clinton Street | City <br> West Seneca | State <br> NY | ZIP <br> 14224 |
|---|---|---|---|

**5.** If you are a current or former employee of the Federal government, list your most recent title, series, and grade.

| Title <br> Customer Service Representative | Series <br> 23DHB | Grade <br> GS-8 |
|---|---|---|

**6.** Name and Address of Organization Where You Work (if a Treasury Employee)

| Bureau and Business Unit <br> Internal Revenue Service | Office and Organizational Component <br> Appletree Call Center |
|---|---|

| Street Address <br> 2875 Union Road, Ste. 12A | City <br> Cheektowaga | State <br> NY | ZIP <br> 14227 |
|---|---|---|---|

**7.** Employment Status in Relation to this Complaint?

| ○ Applicant   ○ Probationary   ◉ Career/Career Conditional <br> ○ Former Employee   ○ Retired   ○ Other: _____ | Date Left Treasury Employment (if applicable) |
|---|---|

## PART II: DESIGNATION OF REPRESENTATIVE

**8.** You may represent yourself in this complaint or you may choose someone to represent you. Your representative does not have to be an attorney. You may change your designation of a representative at a later date, but you must notify the department immediately in writing of any change, and you must include the same information requested in this Part.

"I hereby designate _____ David A Karman, Esq. _____ (Please Print Name) to serve as my representative during the course of this complaint. I understand that my representative is authorized to act on my behalf."

**9.** Representative's Mailing Address

Firm / Organization
Gilbert Employment Law, P.C.

| Street Address <br> 1100 Wayne Avenue, Suite 900 | City <br> Silver Spring | State <br> MD | ZIP <br> 20910 |
|---|---|---|---|

**10.** Representative's Employer (If Federal Agency)

Employer

**11.** Representative's Telephone/Email Address

| Phone <br> (301) 608-0880 | Email <br> DKarman-efile@gelawyer.com |
|---|---|

## PART III: ALLEGED DISCRIMINATORY ACTIONS

**12.** Name and Address of Treasury Bureau that took the action at issue (if different than item 6.)

| Bureau and Business Unit | Office and Organizational Component | | |
|---|---|---|---|
| Street Address | City | State | ZIP |

**13.** If you complaint involves nonselection for a position, please complete the below information. If you wish to allege more than one nonselection, list the same information for each additional nonselection under number 14.

| Position | Series | Grade |
|---|---|---|
| Vacancy Announcement Number | Date Learned of Nonselection | |

**14.** (A) Describe the action taken against you that you believe was discriminatory; (B) Give the date when the action occurred, and the name of each person responsible for the action; (C) Describe how you were treated differently than other employees or applicants; (D) Indicate what harm, if any, came to you in your work situation as a result of this action. (Evidence in support of your claim(s) should be provided to the investigator at a later stage. If you require more space to describe your allegations, please attach an additional page(s) to this form upon submission.)

See attached.

Formal Complaint
Page 2 of 7

**15.** Mark below ONLY the bases you believe were relied on to take the actions described in #14.

| | |
|---|---|
| ☐ Age (Date of Birth:           ) | ☐ National Origin (Specify:       ) |
| ☐ Race (State Race:          ) | ☑ Disability |
| ☐ Color (State Color:         ) | ☐ Protected Genetic Information |
| ☐ Religion (State Religion:      ) | ☑ Retaliation/Reprisal |
| ☐ Sex ( ☐ Male ☐ Female) |     (Date of Prior EEO Activity: **See attached**   ) |
| ☐ Sex–Pregnancy   ☐ Sex–LGBT | ☐ Parental Status |

**16.** What remedial or corrective action are you seeking to resolve this matter?

See attached

## PART IV: CONTACT

**17.** When did the *most recent* discriminatory event occur?

Date of Most Recent Event
Ongoing

**18.** When did you first become aware of the alleged discrimination?

Date of Awareness
May 11, 2018

**19.** When did you contact an EEO Counselor?

Date of EEO Contact
July 28, 2020

| Name of EEO Counselor | EEO Counselor Phone or Email |
|---|---|
| See attached | See attached |

**20.** Did you discuss all actions raised in item 14 with an EEO Counselor?

○ Yes ◉ No    (If no, please explain)
See attached

**21.** When did you receive your **Notice of Right to File**?

Date Recieved Notice
See attached

**22.** If you contacted an EEO Counselor more than 45 days after the most recent alleged discriminatory event, or if you are filing this form more than 15 days after receiving the Notice of Right to File, please provide an explanation for the delay below and attach additional supporting documentation if necessary.

N/A

**23.** On this same matter, have you filed a grievance or appeal under:

| | |
|---|---|
| Negotiated grievance procedure | ○ Yes ◉ No |
| Agency grievance procedure | ○ Yes ◉ No |
| MSPB appeal procedure | ○ Yes ◉ No |

If you filed a grievance or appeal, provide date filed, case number, and present status.

| Date Filed | Case Number | Present Status |
|---|---|---|
| | | |

## PART V: SIGNATURE

**24.** I certify that all of the statements made in this complaint are true, complete, and correct to the best of my knowledge and belief.

| Signature of Complainant or Attorney Representative | | Date |
|---|---|---|
| ▶ David A. Karman, Esq. | Digitally signed by David A. Karman, Esq. Date: 2020.10.27 14:09:51 -04'00' | 10/27/2020 |

00003

Formal Complaint
Page 3 of 7



Gilbert
Employment
Law, P.C.

1100 Wayne Avenue, Suite 900 | Silver Spring, MD 20910
Ph: (301) 608-0880   Fax: (301) 608-0881
www.gelawyer.com

October 27, 2020

Internal Revenue Service
Office of Equity Diversity and Inclusion
*Sent via email to*: edi@irs.gov

> **Re:**   ***Robi Niwinski v. Internal Revenue Service; Formal Complaint of***
> ***Discrimination***

To whom it may concern,

Please be advised that Gilbert Employment Law, P.C. represents Robi Niwinski in her complaint of discrimination against the Internal Revenue Service. Please consider this correspondence and attached form as Ms. Niwinski's formal complaint of discrimination.

On July 28, 2020, Ms. Niwinski submitted her informal complaint of discrimination to the Office of Equity, Diversity, and Inclusion by email to edi@irs.gov. For reference, I have also attached a copy of that submission. However, as of the date of this letter, Ms. Niwinski has not received any contact from an EEO counselor. As the Agency is required to conduct the final interview and issue the Notice of Right to File a Complaint of Discrimination within thirty (30) days of a complainant initiating EEO contact, and as the Agency has failed to do so, Ms. Niwinski submits her formal complaint of discrimination.

Ms. Niwinski is filing a formal complaint on the following issue:

*Whether the Agency subjected Complainant to discrimination based on her disabilities (1. Achromatopsia; 2. Lumbar and cervical issues; 3. Anxiety and depression; and 4. High blood pressure) and in retaliation for engaging in protected activity (requesting reasonable accommodations) when:*

1. From May 11, 2018 to the present, the Agency has failed to provide Complainant with effective reasonable accommodation.

As resolution of this matter, Ms. Niwinski seeks the following:

1. Provide Ms. Niwinski with an effective reasonable accommodation;
2. Back pay for salary lost as a result of the failure to accommodate;
3. Compensatory damages;
4. Reasonable attorneys' fees and costs;

5. All other relief to which she is entitled.

      If you have any questions, concerns, or seek additional information pursuant to 29 C.F.R. § 1614.107(a)(7), please contact us at (301) 608-0880, or by email, at dkarman@-efile@gelawyer.com and dsumner@gelawyer.com. Thank you for your attention to this matter.

Sincerely,

David A. Karman, Esq.

Enclosure (1)

Cc:    Robi Niwinski
        *Sent via email

2

Formal Complaint
Page 5 of 7



**U.S. DEPARTMENT OF THE TREASURY**
**INDIVIDUAL COMPLAINT OF EMPLOYMENT DISCRIMINATION FORM INSTRUCTIONS**
**TDF 62-03.5 (REV. 11/2015 EDITION)**

**(Read the following instructions carefully before you complete this form)**
**(Please complete all items on the complaint form)**

<u>**GENERAL**</u>: This form is to be used to file a formal complaint of discrimination if you are an applicant for employment with the Department of the Treasury, or a present or former Department of the Treasury employee and:

**1)** believe you have been discriminated against because of your **race, color, religion, sex (including pregnancy or LGBT), national origin, age** (40 years or older at the time of the event giving rise to your claim), **disability, protected genetic information,** or in **reprisal** for opposition to activities protected by civil rights statutes or participating in the EEO process, <u>**or**</u>

**2)** believe you have been discriminated against because of your **parental status.** Your claim is not covered under a statutory basis, but will be processed under a parallel procedure.

<u>**IMPORTANT NOTE**</u>: In certain situations, the information provided in Part III of the attached complaint form may be used in lieu of an affidavit in the investigation of your complaint. Accordingly, the information you provide in this part should be brief, clear, and complete.

<u>**WHEN TO FILE**</u>: In accordance with 29 CFR 1614.106, your formal complaint must be filed **within 15 calendar days** of the date you received the Notice of Right to File a Discrimination Complaint form from your EEO Counselor. You must sign and date your complaint. If you are represented <u>**by an attorney**</u>, the attorney may sign the complaint on your behalf.

This time limit may be extended:

**1)** if you show that you were not notified of the time limits and were not otherwise aware of them, or

**2)** if you were prevented by circumstances beyond your control from submitting the matter within the time limit, or

**3)** for other reasons considered sufficient by the Department.

<u>**REPRESENTATION**</u>: You may have a representative of your own choosing at all stages of the processing of your complaint. However, your representative will be disqualified if such representation would conflict with the official or collateral duties of the representative. No EEO Counselor, EEO Investigator or EEO Officer may serve as a representative. (*Your representative need not be an attorney, but only an attorney representative may sign the complaint on your behalf.*)

<u>**WHERE TO FILE**</u>: In accordance with 29 CFR 1614.106(c), your written complaint must be signed by you or your attorney. The complaint should be filed with the Department of the Treasury. (Filing instructions are contained in the "Notice of Right to File" letter, which was provided by your EEO Counselor.) Keep a copy of the completed complaint form for your records.

# PRIVACY ACT STATEMENT

1. **FORM NUMBER/TITLE/DATE**: Department of the Treasury Form Number TDF 62-03.5, Individual Complaint of Employment Discrimination with the Department of the Treasury (10/15 Edition).

2. **AUTHORITY**: 42 USC § 2000e; 29 USC § 633a; PL 95-062, as amended; 5 USC §§ 1303-1304; 5 CFR § § 5.2-5.3; 29 CFR §§ 1614.105, .107; Executive Order 11478, as amended; Executive Order 13145; and Executive Order 13152.

3. **PRINCIPAL PURPOSES**: The purpose of this complaint form, whether recorded initially on the form or taken from a letter from the Complainant, is to record the filing of a formal written complaint of employment discrimination with the Department of the Treasury on the grounds of race, color, religion, sex (including pregnancy or LGBT), national origin, age, disability, protected genetic information, parental status, or retaliation. Information provided on this form will be used by the Department of the Treasury to determine whether the complaint was timely filed and whether the allegations in the complaint are within the purview of 29 CFR Part 1614, or the Executive Orders listed in item 2 above, to provide a factual basis for investigation of the complaint, and to reach a decision on the complaint. This form may also be used to record an amendment request or additional evidence for an open, pending complaint.

4. **ROUTINE USES**: Other disclosures may be:

   **a.** to respond to a request from a Member of Congress regarding the status of the complaint or appeal;

   **b.** to respond to a court subpoena and/or to refer to a district court in connection with a civil suit;

   **c.** to disclose information to authorized officials or personnel to adjudicate a complaint or appeal; or

   **d.** to disclose information to another Federal agency or to a court or third party in litigation when the Government is party to a suit before the court.

5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY, AND EFFECT ON INDIVIDUAL BY NOT PROVIDING INFORMATION**: Formal complaints of employment discrimination must be in writing, signed by the Complainant (or attorney representative), and must identify the parties and action or policy at issue. Failure to comply may result in the Department of the Treasury dismissing the complaint. It is not mandatory that this form be used to provide the requested information.

## DETACH AND KEEP THIS PAGE WHEN YOU FILE YOUR COMPLAINT.

| | |
|---|---|
| **From:** | Molock, Guizelous |
| **To:** | Hawthorne-Copenhaver, Ellen |
| **Subject:** | RE: Niwinski - complaint that was overlooked |
| **Date:** | Monday, December 14, 2020 10:09:49 AM |

I will go with Mariam's recommendation to accept without counseling.

Guy

Guy Molock, Jr.
Assistant Director of Complaint Operations
Office of Civil Rights & Diversity
Department of Treasury
Email: Guizelous.Molock@Treasury.gov
Office Phone: 202-622-4178
Cell Phone:   202-923-0498

**From:** Hawthorne-Copenhaver, Ellen <Ellen.Hawthorne-Copenhaver@treasury.gov>
**Sent:** Friday, December 11, 2020 9:56 AM
**To:** Molock, Guizelous <Guizelous.Molock@treasury.gov>
**Cc:** Majiros, Kelly <Kelly.Majiros@treasury.gov>; Williams, Angela <Angela.Williams@treasury.gov>;
Voth, Timothy <Timothy.Voth@treasury.gov>
**Subject:** FW: Niwinski - complaint that was overlooked

Guy,

This is a complaint for acceptance, without counseling.

See emails below.

Thanks,

Ellen

**From:** Hawthorne-Copenhaver, Ellen <Ellen.Hawthorne-Copenhaver@treasury.gov>
**Sent:** Friday, December 11, 2020 9:49 AM
**To:** Harvey, Mariam <Mariam.Harvey@treasury.gov>
**Subject:** RE: Niwinski - complaint that was overlooked

Sounds good. Thanks.

**From:** Harvey, Mariam <Mariam.Harvey@treasury.gov>
**Sent:** Friday, December 11, 2020 9:48 AM
**To:** Hawthorne-Copenhaver, Ellen <Ellen.Hawthorne-Copenhaver@treasury.gov>

Counselor's Report
Page 1 of 5

**Subject:** RE: Niwinski - complaint that was overlooked

I would be inclined to waive counseling requirement.  The issue is clearly defined, and I would just issue an acceptance.  I would not delay any longer.

Director, Office of Civil Rights and Diversity
Department of the Treasury
202-622-0316
Mariam.harvey@treasury.gov

**From:** Hawthorne-Copenhaver, Ellen <Ellen.Hawthorne-Copenhaver@treasury.gov>
**Sent:** Friday, December 11, 2020 9:28 AM
**To:** Harvey, Mariam <Mariam.Harvey@treasury.gov>
**Subject:** Niwinski - complaint that was overlooked

Mariam,

This is Guy's RDO so I am sending this question to you.

Nic Juarez sent me an email explaining that on July 28, 2020, an informal complaint was received in the centralized mailbox but was overlooked due to some problems with the mailbox.  Nic said the Gilbert law firm then sent a formal complaint, which Nic attached, on October 27, 2020.

I have not yet spoken with Nic.  I assume EDI must have thought we also had the October 27 complaint.  I checked with Tim this morning and he has not seen it. And it is not in efile.

Nic suggested:

*My thoughts: I would contact Attorney to collect additional information to expedite a Counselor report for your office being sure to include a Counselor note with timeline of communications; but wanted your input.*

*Seeking your guidance for next steps.*

Do you agree with this course of action?

Thanks,

Ellen

Counselor's Report
Page 2 of 5

This message was secured by **ZixCorp©**.
*To reach ZixCorp, go to: http://www.zixcorp.com/info/zixmail*

This message was secured by **ZixCorp©**.
*To reach ZixCorp, go to: http://www.zixcorp.com/info/zixmail*

This message was secured by **ZixCorp©**.
*To reach ZixCorp, go to: http://www.zixcorp.com/info/zixmail*

Counselor's Report
Page 3 of 5



Gilbert
Employment
Law, P.C.

1100 Wayne Avenue, Suite 900 | Silver Spring, MD 20910

Ph: (301) 608-0880  Fax: (301) 608-0881

www.gelawyer.com

July 28, 2020

Internal Revenue Service
Office of Equity Diversity and Inclusion
*Sent via email to*: edi@irs.gov

       **Re:** *Robi Niwinski v. Internal Revenue Service; Informal Complaint of Discrimination*

To Whom It May Concern:

       We write on behalf of Robi Niwinski to submit an informal complaint of discrimination. Please be advised that Gilbert Employment Law, P.C., represents Ms. Niwinski in her complaint of discrimination against the Internal Revenue Service. As this matter is pending litigation, we ask the Agency to notify witnesses of their duty to preserve all notes and correspondence, including emails, voicemails, and text messages, related to this matter. *See* 29 C.F.R. § 1602.14; *see also King v. Dep't of Transp.*, EEOC App. No. 07A40003 (Sept. 29, 2005). Further, as Ms. Niwinski is represented in this matter, all correspondence should be served on the undersigned representative with a copy also provided to Ms. Niwinski.

Ms. Niwinski's complaint is as follows:

       Whether the Agency subjected Complainant to discrimination based on her disabilities (1. Achromatopsia; 2. Lumbar and cervical issues; 3. Anxiety and depression; and 4. High blood pressure) and in retaliation for engaging in protected activity (requesting reasonable accommodations) when:

1.  From May 11, 2018 to the present, the Agency has failed to provide Complainant with effective reasonable accommodation.

       If you have questions or require additional information, please contact us at dsumner@gelawyer.com and dkarman@gelawyer.com. Thank you for your attention to this matter.

1

Counselor's Report
Page 4 of 5

Sincerely,

David A. Karman, Esq.
Deryn A. Sumner, Esq.
Gilbert Employment Law, P.C.
1100 Wayne Avenue, Ste. 900
Silver Spring, MD 20901
dkarman@gelawyer.com

Cc:    Robi Niwinski
       Sent via email

2

Counselor's Report
Page 5 of 5



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

David Karman
dkarman@gelawyer.com

**ACCEPTANCE**
Robi Niwinski v.
Steven T. Mnuchin, Secretary of the
Treasury
TD Case No. IRS-21-0122-F

Dear Mr. Karman:

In accordance with the Equal Employment Opportunity Commission (EEOC) regulations at 29 C.F.R. Part 1614, the above referenced complaint of discrimination filed on October 27, 2020, will be processed as explained below.

The following claim is **accepted** for investigation:

**Whether Complainant was discriminated against based on her disability and in reprisal for protected EEO activity, when from May 11, 2018, to the present, the Agency has failed to provide her with effective reasonable accommodation.[1]**

If you or Complainant believe that the claims are incorrectly identified, you may notify Ellen Hawthorne-Copenhaver by e-mail at ellen.hawthorne-copenhaver@treasury.gov, *within five days* of your receipt of this letter to state your disagreement. If you submit a statement, please be clear and concise. If you do not contact this office within five calendar days, it will be assumed that the claims were correctly stated. Please keep in mind that the purpose of this letter is simply to identify factual events that will be accepted for investigation. You will have the opportunity to provide additional details, evidence, and arguments about the events to the investigator who will be assigned to your case.

**Alternative Dispute Resolution**

In accordance with 29 C.F.R. § 1614.603, the parties must make reasonable efforts to voluntarily settle the complaint throughout the complaint process. Alternative Dispute Resolution (ADR) is a procedure used to provide complainants and Treasury bureaus an opportunity to resolve complaints at the earliest stage possible with the mutual agreement of both parties. *At this time, you are invited to participate in ADR.* If you are interested in ADR, please contact our ADR Coordinator, Clarissa Lara, *within five days*

---

[1] Complainant submitted an informal complaint on July 28, 2020. Because of technical problems with an internal mailbox, the Internal Revenue Service (IRS) did not become aware of this communication until months later. Complainant filed a formal complaint on October 27. Under these circumstances, the Agency determined that counseling would be waived.

of the date you receive this letter by e-mail at <u>clarissa.lara@treasury.gov</u>. If ADR is successful, the terms of any settlement agreement will be reduced to writing, and you will be provided a copy. Please be advised that the use of ADR or other settlement attempts do not stop or delay the investigative process.

**Start of the Investigation**
The Department of the Treasury will appoint an EEO investigator to investigate the accepted claims. All parties have a duty to cooperate with the investigator. The investigator will allow all parties to submit evidence. The investigator has the authority to administer oaths and require agency personnel to participate in face-to-face interviews or to provide information through document requests, interrogatories, or affidavits. If you have questions regarding the confidentiality of information you are submitting to the investigator, you are advised to contact your bureau disclosure officials before submitting the information.

Evidence gathered by the investigator is protected from improper disclosure under the Privacy Act. The material which will be provided to you in the form of the Investigative File (or earlier, to provide you an opportunity for rebuttal) is also confidential and **may not be released by you except to your representative**. A willful violation of the Privacy Act may result in criminal penalties. 5 U.S.C. 552a(i).

Usually, the investigation must be completed within 180 days of filing the formal complaint. You may agree to extend the period by 90 days. 29 C.F.R § 1614.108(e).

**Sanctions for Failure to Cooperate**
EEOC regulation 29 CFR § 1614.107(a)(7) provides for dismissal of a complaint if a complainant fails to provide relevant information, and there is not sufficient information in the record to adjudicate the matter. The complainant's affidavit is considered relevant information.

Further, 29 § CFR 1614.108(c)(3) instructs:

> When the complainant, or the agency against which a complaint is filed, or its employees fail without good cause shown to respond fully and in timely fashion to requests for documents, records, comparative data, statistics, affidavits, or the attendance of witness(es), the investigator may note in the investigative record that the decision-maker should, or the Commission on appeal may, in appropriate circumstances:

> (i)   Draw an adverse inference that the requested information, or the testimony of the requested witness, would have reflected unfavorable on the party refusing to provide the requested information;

> (ii)  Consider the matters to which the requested information or testimony pertains to be established in favor of the opposing party;

    (iii)   Exclude other evidence offered by the party failing to produce the requested information or witness;

    (iv)   Issue a decision fully or partially in favor of the opposing party; or

    (v)   Take such other actions as it deems appropriate.

The creation of an appropriate factual record is not possible without your cooperation and failure to cooperate may result in the dismissal of this complaint.

**Additional Claims**
Pursuant to 29 C.F.R. § 1614.106(d), you or Complainant may amend the complaint at any time prior to the end of the investigation to include issues or claims that are like or related to those raised in the complaint. If the additional issues or claims are not like or related to the current complaint, they cannot be included, and Complainant must initiate contact with an EEO counselor within 45 days of the incident. When a complaint has been amended, the agency shall complete its investigation within the earlier of 180 days after the last amendment to the complaint or 360 days after the filing of the original complaint. 29 C.F.R. § 1614.106(e)(2). If after 180 days (or 270 days if you grant an extension) the investigation is not complete, you may request a hearing from an EEOC Administrative Judge (AJ). 29 C.F.R § 1614.108(h).

**End of the Investigation**
When the investigation is completed, you and Complainant will receive a copy of the investigative file. At that time, Complainant will have 30 days to choose one of the following courses of action:

1.   request a Final Agency Decision (FAD) from the Department of the Treasury pursuant to 29 C.F.R § 1614.110(b); or

2.   request the EEOC appoint an AJ to conduct a hearing and issue a decision pursuant to 29 C.F.R § 1614.108(h).

Complainant will have the right to appeal the outcome to the EEOC, Office of Federal Operations. 29 C.F.R. § 1614.401(a).

**Right to file a Civil Action**
Pursuant to 29 C.F.R. § 1614.407, Complainant has the right to file a civil action in federal district court:

1.   Within 90 days of receipt of the Department of the Treasury's final action if no appeal has been filed;

2.   After 180 days from the date of filing a complaint if no appeal has been filed and no final action on the complaint has been issued;